IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

DANNY LEE BANKS,               )
                               )
        Movant,               )
                               )
v.                             )     Cv. No. 16-02275
                               )     Cr. No. 92-20177
UNITED STATES OF AMERICA,       )
                               )
        Respondent.           )
                               )
                               )

## ORDER

Before the Court is Danny Lee Banks's April 22, 2016 pro se motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (the "§ 2255 Motion"). (Cv. ECF No. 1.) Banks seeks relief under Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson"). On August 3, 2016, the Court ordered the United States to respond. (Cv. ECF No. 5.) The United States responded on August 4, 2016 (the "Response"). (Cv. ECF No. 7.) Banks replied on August 25, 2016 (the "Reply"). (Cv. ECF No. 9.) On September 20, 2016, the Court ordered the United States to file an additional response. (Cv. ECF No. 10.) The United States filed a supplemental response on September 26, 2016 (the "Supplemental Response"). (Cv. ECF No. 11.) Banks

filed a second reply on October 17, 2016 (the "Second Reply").[1] (Cv. ECF No. 13.)

On January 17, 2017, Banks filed a motion for leave to supplement record with additional materials (the "Supplemental Record"). (Cv. ECF Nos. 14-15.) Banks filed a second motion for leave to supplement the record with additional materials on October 18, 2017 (the "Second Supplemental Record"). (Cv. ECF No. 18.) Both motions for leave to supplement the record are GRANTED.

On July 10, 2017, Banks filed a motion for a just, speedy, and inexpensive determination of his case. (Cv. ECF No. 17.) On January 8, 2018, Banks filed a motion to appoint counsel. (Cv. ECF No. 19.) Both motions are DENIED as MOOT.

For the following reasons, the § 2255 Motion is DENIED.

## I. Background

On June 9, 1992, a federal grand jury in the Western District of Tennessee returned a four-count indictment charging Banks with the following violations of 18 U.S.C. § 922(g): (1) knowingly possessing a firearm as a convicted felon, on November 26, 1991; (2) knowingly possessing ammunition as a convicted felon, on November 26, 1991; (3) knowingly possessing a firearm as a convicted felon, on December 27, 1991; and (4) knowingly

---

[1] Banks's pro se motion for an extension of time to file a reply to the United States' Supplemental Response is GRANTED. The Court will consider Banks's Second Reply. To the extent Banks requests additional time to file an additional reply, the request is DENIED.

possessing ammunition as a convicted felon, on December 27, 1991. (Cr. ECF No. 1.)

The United States subsequently dismissed Counts 3 and 4, related to the December 27, 1991 incident, and proceeded to trial on Counts 1 and 2, related to the November 26, 1991 incident. (Cr. ECF No. 47.) A jury found Banks not guilty on Count 1 and guilty on Count 2. (Cr. ECF Nos. 49, 53.)

The United States Probation Office prepared a Presentence Investigation Report (the "PSR"). (PSR at 1.) The PSR calculated Banks's guideline sentencing range pursuant to the 1994 edition of the United States Sentencing Commission Guidelines Manual (the "U.S.S.G."). (Id. at 4.)

Banks's base offense level was 24. (Id.) There was a two-level enhancement for obstruction of justice because Banks committed perjury during his trial. (Id.) Banks's adjusted offense level subtotal was 26. (Id.)

According to the PSR, Banks was an armed career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "ACCA"), and subject to a sentencing enhancement. (Id. at 4-5.) The PSR identified numerous prior felonies as ACCA-qualifying convictions. (Id. at 4.) The ACCA enhancement resulted in a total offense level of 34. (Id. at 4-5.) Banks's criminal history category was VI. (Id. at 20.) His recommended guideline range was 262-327 months. (Id.) Banks's statutory

minimum sentence was 180 months, and his statutory maximum sentence was life. (Id.)

Banks was sentenced on April 5, 1996. (Cr. ECF No. 71.) The court adopted the PSR's factual findings and calculated Banks's total offense level, criminal history category, and guideline sentencing range consistently with the PSR. (Cr. ECF No. 72.) At Banks's sentencing hearing, the court found that Banks's criminal history category did not reflect the seriousness of his prior criminal conduct. United States v. Banks, No. 96-5597, 1997 WL 561421, at *2 (6th Cir. Sept. 9, 1997) (discussing Banks's sentencing proceedings). The court explained: "Mr. Banks is a threat to society and will continue to be a threat to society, and I feel that I would be remiss in my obligations if I did not do the maximum that I could to protect the public from Mr. Banks' future criminal activity." Id. The court departed upward and sentenced Banks to life in prison. Id.

Banks appealed, challenging only the court's upward departure. Id. at *3. On September 9, 1997, the United States Court of Appeals for the Sixth Circuit affirmed. Banks, 1997 WL 561421.

## II. Standard of Review for § 2255 Motions

Pursuant to 28 U.S.C. § 2255(a):

4

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (quotation marks omitted). A prisoner must file his § 2255 motion within one year of the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

A § 2255 motion is not a substitute for a direct appeal. Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013). "[C]laims not raised on direct appeal," which are thus procedurally defaulted, "may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003); see also, e.g., El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); Peveler v. United States, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a petitioner may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." Bousley v. United States, 523 U.S. 614, 622-23 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. The § 2255 movant is entitled to reply to the government's

response.  Rule 5(d), § 2255 Rules.  The Court may also direct the parties to provide additional information relating to the motion.  Rule 7, § 2255 Rules.

## III. Analysis

### A.  Basis and Timeliness of § 2255 Motion

Banks challenges his sentence based on Johnson, which provides a new rule of constitutional law made retroactively applicable to cases on collateral review.  Welch v. United States, 136 S. Ct. 1257, 1268 (2016).  Banks's § 2255 Motion alleges constitutional error that resulted in a sentence that now exceeds the statutory limits applicable to his offense.  See Short, 471 F.3d at 691.  Johnson was decided on June 26, 2015, and Banks filed his Motion on April 22, 2016.  (Cv. ECF No. 1.) Banks filed his Motion within one year of Johnson.  Banks's Motion is timely.  See 28 U.S.C. § 2255(f)(3).[2]

---

[2] The United States does not argue that Banks's Johnson claim is procedurally defaulted.  Banks did not challenge his ACCA sentencing enhancement on direct appeal.  Although the Court may raise the issue of procedural default sua sponte, it is not required to do so because procedural default is not a jurisdictional bar to review on the merits.  See Jones v. United States, 689 F.3d 621, 624 n.1 (6th Cir. 2012); Howard v. Bouchard, 405 F.3d 459, 476 (6th Cir. 2005).  Courts that have considered procedural default challenges to prisoners' Johnson-based § 2255 motions have consistently ruled that cause and prejudice excuse a prisoner's procedural default in the Johnson-context. Duhart v. United States, No. 08-60309-CR, 2016 WL 4720424, at *4 (S.D. Fla. Sept. 9, 2016) ("Where the Supreme Court explicitly overrules well-settled precedent and gives retroactive application to that new rule after a litigant's direct appeal, '[b]y definition' a claim based on that new rule cannot be said to have been reasonably available to counsel at the time of the direct appeal." (quoting Reed v. Ross, 468 U.S. 1, 17 (1984))); see also United States v. Taylor, No. 2:13-CR-0384 GEB CKD, 2016 WL 5468381, at *3-4 (E.D. Cal. Sept. 28, 2016); United States v. Benard, No. 16-CV-02692-SI, 2016 WL 5393939, at *3-5 (N.D. Cal. Sept. 27, 2016); Henderson v. United States, No. 16-00572-CV-W-ODS, 2016 WL 4967898, at *2 (W.D. Mo. Sept. 16, 2016);

## B.    ACCA "Violent Felony" Framework

Under the ACCA, a defendant convicted under 18 U.S.C. § 922(g) who has three previous convictions for violent felonies or serious drug offenses is subject to an enhanced mandatory minimum sentence of 180 months' imprisonment, 18 U.S.C. § 924(e), with a maximum sentence of life, United States v. Little, 61 F.3d 450, 454 (6th Cir. 1995) (citing United States v. Wolak, 923 F.2d 1193, 1199 (6th Cir. 1991)).  Without the ACCA-enhancement, a defendant convicted under 18 U.S.C. § 922(g) is subject to a statutory maximum sentence of 120 months' imprisonment.  18 U.S.C. § 924(a)(2).

The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (a) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"), (b) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offenses clause"), or (c) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause").  18 U.S.C. § 924(e)(2)(B).

In Johnson, the Supreme Court held that the imposition of an increased sentence under the ACCA's residual clause violates

_____

Andrews v. United States, No. 2:16-CV-00501-DB, 2016 WL 4734593, at *5-6 (D. Utah Sept. 9, 2016); United States v. Garcia, No. 13-CR-00601-JST-1, 2016 WL 4364438, at *2-5 (N.D. Cal. Aug. 16, 2016); United States v. Gomez, No. 2:04-CR-2126-RMP, 2016 WL 1254014, at *4 (E.D. Wash. Mar. 10, 2016).

8

due process. 135 S. Ct. at 2563. In <u>Welch</u>, the Supreme Court retroactively applied <u>Johnson</u> to ACCA cases on collateral review. 136 S. Ct. at 1268. <u>See also</u> <u>In re Watkins</u>, 810 F.3d 375, 383-84 (6th Cir. 2015) (same).

<u>Johnson</u> did not question the imposition of sentencing enhancements under the ACCA's use-of-force clause or enumerated-offenses clause. <u>Johnson</u>, 135 S. Ct. at 2563. "The government accordingly cannot enhance [a defendant's] sentence based on a prior conviction that constitutes a violent felony pursuant only to the residual clause." <u>United States v. Priddy</u>, 808 F.3d 676, 683 (6th Cir. 2015), <u>abrogated on other grounds by</u> <u>United States v. Stitt</u>, 860 F.3d 854 (6th Cir. 2017). "But a defendant can still receive an ACCA-enhanced sentence based on the statute's use-of-force clause or enumerated-offense[s] clause." <u>Id.</u>

"When determining which crimes fall within . . . the violent felony provision" of the ACCA, "federal courts use the categorical approach." <u>United States v. Covington</u>, 738 F.3d 759, 762 (6th Cir. 2013) (quotation marks omitted); <u>United States v. Gibbs</u>, 626 F.3d 344, 352 n.6 (6th Cir. 2010). Under that approach, courts "look[] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." <u>Taylor v. United States</u>, 495 U.S. 575, 600 (1990). "[T]here are two steps in applying the categorical approach to determine whether a prior conviction

constitutes . . . a violent felony under the ACCA." Covington, 738 F.3d at 763.

"First, a court must ask whether the statute at issue is divisible by determining if the statute lists 'alternative elements.'" Id. (quoting Descamps v. United States, 133 S. Ct. 2276, 2293 (2013)). "[A] divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Descamps, 133 S. Ct. at 2283. If a statute is divisible, meaning that it "comprises multiple, alternative versions of the crime," a court then uses a "modified categorical approach" and may "examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." Id. at 2283-84. "Where the defendant has pled guilty, these so-called Shepard documents may include the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" United States v. Denson, 728 F.3d 603, 608 (6th Cir. 2013) (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)). "[T]he question is whether the court documents establish that the defendant necessarily admitted the elements of a predicate offense through his plea." United States v. McMurray, 653 F.3d 367, 377 (6th Cir. 2011) (quotation marks omitted).

The Supreme Court has clarified that a court should use the modified categorical approach only when a statute "lists multiple elements disjunctively," not when it instead "enumerates various factual means of committing a single element." Mathis v. United States, 136 S. Ct. 2243, 2249, 2256 (2016). A "court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." Id. at 2256. It can do so by examining state law to determine (a) whether "a state court decision definitively answers the question," or (b) whether "the statute on its face . . . resolve[s] the issue." Id. Alternatively-listed items are elements where they "carry different punishments" or where the statute "itself identif[ies]" them as "things [that] must be charged," but they are means where the "statutory list is drafted to offer 'illustrative examples'" only. Id. "[I]f state law fails to provide clear answers," a court may take "a peek at the record documents" of the prior conviction "for the sole and limited purpose of determining whether the listed items are elements of the offense." Id. (alterations omitted) (quotation marks omitted). If the listed items are "means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." Id.

Second, after having determined which of a statute's alternative elements formed the basis of the defendant's prior

conviction, or after having determined that the statute is indivisible, "the court must ask whether the offense the statute describes, as a category, is a [violent felony]."[3] <u>Covington</u>, 738 F.3d at 763. "When determining whether a particular offense qualifies as a 'violent felony' under the use-of-force clause, [a court is] limited to determining whether that offense 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" <u>Priddy</u>, 808 F.3d at 685 (quoting 18 U.S.C. § 924(e)(2)(B)(i)). "The force involved must be 'violent force—that is, force capable of causing physical pain or injury to another person.'" <u>Id.</u> (quoting <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010) ("<u>Johnson 2010</u>")). "If the offense 'sweeps more broadly' and 'criminalizes a broader swath of conduct' than [would] meet th[is] test[], then the offense, as a category, is not a [violent felony]." <u>Covington</u>, 738 F.3d at 764 (quoting <u>Descamps</u>, 133 S. Ct. at 2281, 2283, 2289-91).

## C. Analysis of Banks's Previous Convictions

In its Supplemental Response, the United States argues that Banks has three prior Tennessee convictions that qualify as

---

[3] Even with a divisible statute, a court may proceed directly to the second step and analyze each of a statute's alternative elements without consulting <u>Shepard</u> documents to determine which alternative elements formed the basis of the conviction. <u>See</u> <u>United States v. Mitchell</u>, 743 F.3d 1054, 1066 (6th Cir. 2014) ("Although the Tennessee robbery statutes are divisible, we need not defer to the modified categorical approach to determine which alternative formed the basis of Mitchell's prior conviction. As already discussed, neither alternative element departs from the definitions provided in the 'use of physical force' clause . . . .").

ACCA-predicate offenses under the ACCA's use-of-force clause. (Suppl. Resp., Cv. ECF No. 11 at 5-15.) Those convictions include: (1) a 1981 conviction for voluntary manslaughter; (2) a 1987 conviction for robbery; and (3) a 1987 conviction for assault with intent to commit first degree murder.[4]

### 1. Voluntary Manslaughter

At the time of Banks's 1981 manslaughter conviction, Tennessee's manslaughter statute provided: "Manslaughter is the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act." Tenn. Code Ann. § 39-2409 (1975) (repealed).[5] Manslaughter is not a felony listed in the ACCA's enumerated-offenses clause. See 18

---

[4] In its Response, the United States identifies the following additional prior Tennessee convictions as potential ACCA-predicate offenses, based on Banks's PSR: (1) a 1985 conviction for attempted first degree burglary; (2) a second 1985 conviction for attempted first degree burglary; (3) a 1993 conviction for attempted aggravated robbery; (4) a 1993 conviction for two counts of attempted second degree murder and two counts of attempted especially aggravated robbery; (5) a 1993 conviction for aggravated robbery; and (6) a second 1993 conviction for aggravated robbery. (Resp., Cv. ECF No. 7 at 2 (citing PSR at 7-14).) The United States concedes that the first two convictions do not qualify as ACCA-predicate offenses after Johnson because they were predicates only under the residual clause. (Suppl. Resp., Cv. ECF No. 11 at 6.) As to the latter four, because Banks's 1991 § 922(g) offense conduct occurred before his 1993 convictions, the United States now abandons the original argument in its Response that these 1993 convictions are qualifying ACCA predicates. It concedes that "[c]ourts have uniformly held that a conviction that is incurred after the offense conduct giving rise to a § 922(g) violation cannot be an ACCA predicate." (Id. at 5.)

[5] The parties cite Tenn. Code Ann. § 39-2-221 (1982) as the manslaughter statute in effect at the time of Banks's 1981 conviction. (Suppl. Resp., Cv. ECF No. 11 at 6; Second Reply, Cv. ECF No. 13 at 2.) Section 39-2-221 (1982) did not take effect until 1982, the year after Banks's 1981 conviction. The 1982 version became effective as part of a renumbering of the Tennessee Code. The wording of the statute remained the same. Compare § 39-2409 (1975), with § 39-2-221 (1982). Banks was convicted under § 39-2409 (1975).

U.S.C. § 924(e)(2)(B)(ii). The Sixth Circuit has not addressed whether a conviction under § 39-2409 qualifies as a violent felony under the ACCA's use-of-force clause.[6]

Section 39-2409 was a divisible statute, which established separate crimes of voluntary manslaughter and involuntary manslaughter. See Frazier v. United States, No. 2:04-CR-52-JRG-1, 2017 WL 1103400, at *4 (E.D. Tenn. Mar. 23, 2017) (finding Tenn. Code Ann. § 39-2-2221 is divisible because it disjunctively lists voluntary and involuntary commission of some unlawful act). In State v. Parker, 350 S.W.3d 883, 905-07 (Tenn. 2011), the Tennessee Supreme Court discussed State v. Mellons, 557 S.W.2d 497 (Tenn. 1977), which addressed convictions under § 39-2409. The Parker court said that Tennessee's manslaughter statute established two different degrees of manslaughter, which could be charged to a jury as separate offenses. 350 S.W.3d at 906-07. See also Nelson v. State, 65 Tenn. 418, 421 (1873) (explaining that Tennessee's manslaughter statute "ma[de] two separate grades of felony of manslaughter, and affixe[d] different punishments").

---

[6] The Sixth Circuit has addressed whether voluntary manslaughter under Tenn. Code Ann. § 39-13-211(a) is a predicate offense under the "use of force" clause. Walls v. United States, No. 17-5354, 2017 WL 4770923, at *2 (6th Cir. Aug. 24, 2017) (finding reasonable jurists would not debate district court's conclusion that voluntary manslaughter under T.C.A. § 39-13-211(a) was a predicate offense because "the Tennessee voluntary-manslaughter statute requires proof that the defendant knowingly killed another in circumstances that would otherwise be second-degree murder, and thus necessarily is an offense that has the use of physical force as an element.").

Because § 39-2409 listed alternative elements rather than alternative means, it was divisible. See Mathis, 136 S. Ct. at 2256. The Court may examine Shepard documents to determine which of § 39-2409's alternative elements formed the basis of Banks's prior conviction. See Descamps, 133 S. Ct. at 2283-84. Banks's Shepard documents confirm that his manslaughter conviction was for voluntary manslaughter, not involuntary manslaughter.[7] Although a Tennessee grand jury returned an indictment charging Banks with second degree murder, state court records show that Banks was adjudged guilty of voluntary manslaughter after he pled guilty to that lesser-included offense. (ECF No. 11-3 at 1-5.) These records establish that Banks "necessarily admitted the elements" of voluntary manslaughter. See McMurray, 653 F.3d at 377.

Having confirmed that Banks was convicted of voluntary manslaughter, the Court must determine whether the 1981 version of Tennessee voluntary manslaughter, as a category, is a violent felony.[8] Covington, 738 F.3d at 763. At the time of Banks's conviction, voluntary manslaughter was defined as "the unlawful

---

[7] Banks's contention that he was convicted of involuntary manslaughter is without merit. (Reply, Cv. ECF No. 9 at 2.)

[8] It is not necessary to determine whether Tennessee's manslaughter statute was overbroad because it included involuntary manslaughter before examining the Shepard documents. The Shepard documents clearly show that Banks was convicted of voluntary manslaughter. The Court need only determine whether Tennessee voluntary manslaughter is categorically a violent felony under the ACCA's use-of-force clause. The Court need not opine separately about whether Tennessee involuntary manslaughter is a crime of violence. See infra note 12.

and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man." <u>Smith v. State</u>, 370 S.W.2d 543, 545 (Tenn. 1963). As such, a voluntary manslaughter conviction required an "intentional killing."

In <u>United States v. Collins</u>, 799 F.3d 554, 597 (6th Cir.), <u>cert. denied</u>, 136 S. Ct. 601 (2015), the Sixth Circuit opined: "We have previously held that crimes which require proof of physical injury necessarily have as an element the use, attempted use, or threatened use of physical force against the person of another and thus qualify as crimes of violence under the [use-of-force] clause of the ACCA" (quotation marks omitted) (citing <u>United States v. Anderson</u>, 695 F.3d 390, 400-01 (6th Cir. 2012)).

In <u>Anderson</u>, the Sixth Circuit addressed whether aggravated assault under Ohio law was a violent felony under the ACCA's use-of-force clause. 695 F.3d at 399-400. The court noted that Ohio aggravated assault was committed when a person:

> while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force . . . knowingly: (1) [c]ause[s] serious physical harm to another . . . [or] (2) [c]ause[s] or attempt[s] to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance . . . .

Id. (alterations in original) (quoting Ohio Rev. Code Ann. § 2903.12(A)). The court concluded: "We hold that one can 'knowingly . . . [c]ause serious physical harm to another,' Ohio Rev. Code § 2903.12(A)(1), only by knowingly using force capable of causing physical pain or injury, i.e., violent physical force, in the context of determining what crime constitutes a 'violent felony' under § 924(e)(2)(B)(i)." Id. at 400. The court also concluded "that it does not matter that the Ohio statute at issue does not contain a stand-alone physical force element because proof of serious physical injury or pain under the statute necessarily requires proof of violent physical force." Id. at 401.

In United States v. Jackson, 655 F. App'x 209 (6th Cir. 2016), the Sixth Circuit addressed whether a conviction under Georgia's voluntary manslaughter statute qualified as a violent felony under the ACCA's use-of-force clause. The court noted that Georgia's voluntary manslaughter statute provided:

> "[a] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." Ga. Code Ann. § 16-5-2(a).

Id. (alterations in original). The defendant argued that, because "one must cause the death of another human being, to be

convicted under section 16-5-2 but need not do so by physical force," a conviction under Georgia's voluntary manslaughter statute failed to qualify under the ACCA's use-of-force clause. Id. at *1-2 (alterations omitted) (quotation marks omitted). Relying on Anderson, the court rejected that argument. Id. at 292. It explained that "proof that a person 'cause[d] the death of another human being under the circumstances which would otherwise be murder,' § 16-5-2(a), necessarily requires proof that the individual used 'force capable of causing physical pain or injury,' Anderson, 695 F.3d at 400." Id. The court further rejected the defendant's suggestion that, because one could cause the death of another human being by means of poisoning or laying a trap, Georgia's voluntary manslaughter statute could be violated without the violent force that the ACCA's use-of-force clause requires. Id.

Relying on Jackson, the Sixth Circuit denied a certificate of appealability on whether a 1999 Tennessee conviction for voluntary manslaughter under Tenn. Code Ann. § 39-13-211 satisfied the ACCA's use-of-force clause. Walls v. United States, No. 17-5354, 2017 WL 4770923 (6th Cir. Aug. 24, 2017). The court found the district court reasonably concluded that "Tennessee's voluntary-manslaughter statute, Tenn. Code Ann. § 39-13-211, is substantially indistinguishable from the Georgia statute and therefore is an ACCA violent felony under Jackson."

Id. at *1-2.  The court held that "[s]imilar to the Georgia statute, the Tennessee voluntary-manslaughter statute requires proof that the defendant knowingly killed another in circumstances that would otherwise be second-degree murder, and thus necessarily is an offense that has the use of physical force as an element."  Id. at *2 (citing Jackson, 655 F. App'x at 292-93).

Like § 39-13-211, Tennessee voluntary manslaughter under § 39-2409 required an intentional killing by the defendant, was a "crime[] which require[d] proof of physical injury[,]" and therefore "necessarily ha[d] as an element the use attempted use, or threatened use of physical force against the person of another."  Collins, 799 F.3d at 597.  Force capable of killing another human being by definition is "force capable of causing physical pain or injury" or "violent physical force."  Anderson, 695 F.3d at 400.  It does not matter that Tennessee's manslaughter statute does not contain an express use-of-force element because such an element is necessarily implicit.  See id. at 401; Jackson, 2016 WL 3619812, at *2.  Tennessee voluntary manslaughter under § 39-2409 qualifies as a violent felony under the ACCA's use-of-force clause.  See Collins, 799 F.3d at 597.

Banks contends that Jackson is distinguishable.  (Second Reply, Cv. ECF No. 13 at 2-3.)  He argues that Georgia's

voluntary manslaughter statute required proof that a person "cause[d] the death of another human being under circumstances which would otherwise be murder," Jackson, 2016 WL 3619812, at *1, but that Tennessee voluntary manslaughter was the "unlawful killing of another without malice, § 39-2409." (Second Reply, Cv. ECF No. 13 at 3.) Banks concludes that Tennessee voluntary manslaughter is not a violent felony under the ACCA's use-of-force clause.[9] (Id.)

In distinguishing Jackson, Banks focuses on differences in the proof of criminal intent required to convict under the two manslaughter statutes, not on the differences in proof of physical force required to convict. Collins, Anderson, and Jackson establish that "crimes which require proof of physical injury necessarily" entail the degree of violent force required under the ACCA's use-of-force clause. Collins, 799 F.3d at 597. Nothing in those decisions requires proof of malice for an offense to qualify under the use-of-force clause. Banks's argument lacks merit.

Banks's 1981 Tennessee voluntary manslaughter conviction is a violent felony under the ACCA's use-of-force clause.

---

[9] Banks also argues that his voluntary manslaughter conviction does not qualify as a violent felony under Mathis, but he does not explain why. (Second Reply, Cv. ECF No. 13 at 2.)

##     2.    Robbery

At the time of Banks's 1987 robbery conviction, Tennessee's robbery statute provided: "Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear."  Tenn. Code Ann. § 39-2-501(a) (1982) (repealed).

In United States v. Mitchell, 743 F.3d 1054, 1058, 1060 (6th Cir. 2014), the Sixth Circuit held that a conviction under either § 39-2-501 or Tenn. Code Ann. § 39-13-401, Tennessee's 2003 robbery statute with wording "differ[ing] only slightly," is categorically a violent felony under the ACCA's use-of-force clause.  The court explained that a conviction under § 39-2-501 or § 39-13-401 qualifies as a violent felony regardless of whether the robbery was effected by violence or by putting the victim in fear.  Id. at 1058-1060.

Banks contends that Mathis has undermined Mitchell. (Second Reply, ECF No. 13 at 1-2.)  Banks argues that "violence" and "putting the person in fear" are alternative means of committing robbery rather than alternative elements, so that § 39-2-501 is an indivisible statute.  Banks argues that, because § 39-2-501 was overbroad, permitting convictions for robbery committed by putting the victim in fear, convictions under § 39-2-501 no longer qualify as ACCA predicates.  (Id.) Banks relies on United States v. Gardner, 823 F.3d 793, 803-04

(4th Cir. 2016), which held that North Carolina common law robbery did not qualify as a violent felony under the ACCA's use-of-force clause because it could "be committed by the alternative means of violence or fear."

Banks's argument lacks merit. The Tennessee Supreme Court has construed "by violence or putting the person in fear" as alternative elements, not alternative means. See, e.g., State v. Fitz, 19 S.W.3d 213, 214 (Tenn. 2000) (discussing the "element" of violence); State v. Taylor, 771 S.W.2d 387, 398 (Tenn. 1989) (discussing the "element" of fear). North Carolina common law robbery could be committed with "minimal contact," thus falling short of the degree of force required under the ACCA. See Gardner, 823 F.3d at 803-04. By contrast, robbery under § 39-2-501, whether committed by violence or by putting the victim in fear, satisfies the ACCA's definition of violent force, Mitchell, 743 F.3d at 1058-60.

Since Mathis, the Sixth Circuit has continued to rely on Mitchell. See United States v. Yates, 866 F.3d 723, 733 (6th Cir. 2017) (citing Mitchell and concluding that "precedent from this circuit supports the conclusion that generic robbery requires a confrontation that at the very least implies the threat of violence."); United States v. Lester, No. 17-5230, 2017 WL 5900646, at *3 (6th Cir. Nov. 30, 2017) (holding Mitchell "continues to govern" after Mathis). The Sixth Circuit

recognizes Tennessee robbery as a predicate felony under the ACCA's use-of-force clause. United States v. Southers, 866 F.3d 364, 366-68 (6th Cir. 2017) (reaffirming that Tennessee robbery is categorically a violent felony under the ACCA).

After Johnson and Mathis, Banks's 1987 conviction for Tennessee robbery remains a violent felony under the ACCA's use-of-force clause.

### 3. Assault with Intent to Commit First-Degree Murder

At the time of Banks's 1987 conviction for assault with intent to commit first degree murder, the Tennessee statute provided: "Whoever shall feloniously and with malice aforethought assault any person, with intent to commit murder in the first degree, or shall administer or attempt to give any poison for that purpose, though death shall not ensue, shall, on conviction, be imprisoned" for a period between five and 25 years. Tenn. Code Ann. § 39-2-103(a)(1982)(repealed). Assault with intent to commit first degree murder is not listed in the ACCA's enumerated offenses clause. See 18 U.S.C. § 924(e)(2)(B)(ii). The Sixth Circuit has not addressed whether a conviction under § 39-2-103 qualifies as a violent felony under the ACCA's use-of-force clause.

Section 39-2-103 was a divisible statute, which established separate crimes: (a) assault, (b) administering poison, and (c) attempting to give poison, any one of which had to be done with

23

malice aforethought and intent to commit first degree murder. The Sixth Circuit has noted that § 39-2-103 contained "two distinct provisions" prohibiting separate offenses. See United States v. Jones, 673 F.3d 497, 506-07 (6th Cir. 2012). In discussing a predecessor version of § 39-2-103, with almost identical wording in relevant part, the Tennessee Supreme Court explained that the first provision, prohibiting assault, defined one offense, and the second provision, prohibiting administering poison and attempting to give poison, defined two separate offenses. Collins v. State, 50 Tenn. 14, 17, 19 (1870).

Because § 39-2-103 listed alternative elements rather than alternative means, it was divisible, see Mathis, 136 S. Ct. at 2256. The Court may examine Shepard documents to determine which of § 39-2-103's alternative elements formed the basis of Banks's prior conviction. See Descamps, 133 S. Ct. at 2283-84. Banks's Shepard documents confirm that his conviction under § 39-2-103 was for assault with intent to commit first degree murder. A Tennessee grand jury returned an indictment charging Banks with separate counts of "assault to murder first degree" and "aggravated assault."[10] (Cv. ECF No. 11-3 at 13.) On the "assault to murder first degree" count, the grand jury

---

[10] Tennessee courts use labels like "assault with intent to commit first-degree murder" and "assault to murder" interchangeably. See, e.g., State v. Strong, No. 88-82-III, 1989 WL 34942, at *1 (Tenn. Crim. App. Apr. 12, 1989); State v. Savage, No. 26, 1985 WL 4572, at *1-2 (Tenn. Crim. App. Dec. 18, 1985).

specifically charged that Banks "did unlawfully, wilfully, feloniously, maliciously, deliberately and premeditatedly make an assault upon" another "with a pistol, with the felonious intent, then and there, to . . . kill and murder" the victim "and to commit the crime of Murder in the First Degree." (Id. at 15.) Both Banks's record of judgment and his negotiated plea agreement state that he pled guilty to, and was convicted of, "assault to murder first degree." (See id. at 16-17.) His plea colloquy also supports that finding. (Suppl. Record, ECF No. 18-2 at 4.) Those records establish that Banks "necessarily admitted the elements" of assault with intent to commit first degree murder. See McMurray, 653 F.3d at 377.

Having confirmed that Banks was convicted of assault with intent to commit first degree murder, the Court must determine whether this Tennessee offense, as a category, is a violent felony.[11] Covington, 738 F.3d at 763.

---

[11] The United States argues that "[t]he first question this Court must consider is whether a violation of the statute necessarily involves the use, attempted use, or threatened use of force regardless [of] whether the defendant commits the offense by assault or poisoning." (Suppl. Resp., Cv. ECF No. 11 at 10-11 (emphasis in original).)

Although Mitchell suggests determining whether a statute is overbroad before applying the modified approach, Mitchell, 743 F.3d at 1063-65, the Sixth Circuit has not consistently followed that approach, compare, e.g., United States v. Ozier, 796 F.3d 597, 603 (6th Cir. 2015) (citing Mitchell for the proposition that courts may analyze divisible statutes under the modified categorical approach only if the statute of conviction is overbroad), abrogated on other grounds by Mathis, 136 S. Ct. 2243, with United States v. Davis, 751 F.3d 769, 774-76 (6th Cir. 2014) (using the modified categorical approach without first determining whether the statute as a whole was overbroad and analyzing under the categorical approach the specific offense for which the defendant was convicted, as demonstrated by Shepard documents).

At the time of Banks's conviction, assault in Tennessee was "an attempt or offer to do a personal violence to another. . . . with the present means of carrying the intent into effect." Richels v. State, 33 Tenn. 606, 608 (1854). Assault was also defined as "an attempt, or the unequivocal appearance of an attempt, to do a corporal injury to another, the intent to do harm being essential." Cowley v. State, 78 Tenn. 282, 284 (1882) (citing Richels, 33 Tenn. 606). To sustain a conviction for assault with intent to commit first degree murder, "it [had to] appear that the assault was of such a character, and made under such circumstances that had death ensued, the accused would have been guilty of murder in the first degree." Floyd v. State, 50 Tenn. 342, 343-44 (1871). The offense had to be committed with deliberation and premeditation. See Presley v. State, 30 S.W.2d 231, 234 (Tenn. 1930). The offense also had to be committed with "malice aforethought." Tenn. Code Ann. § 39-2-103(a). "Malice [was] an intent to do an injury to another, a design formed in the mind of doing mischief to another." State

---

In this case it is logical to apply the modified approach before determining whether the statute is overbroad.

The Shepard documents here clearly show that Banks was convicted of assault with intent to commit first degree murder, a violent felony under the ACCA's use-of-force clause. It is unnecessary for the Court to opine about whether another offense also categorically qualifies as a violent felony. The United States has not cited any authority for what "administer or attempt to give any poison" means under Tennessee law. See Mitchell, 743 F.3d at 1058 ("[Courts] must look only to the fact of conviction and the statutory definition of the prior offense . . . ."). The Court can decide Banks's § 2255 Motion without further briefing by the United States.

v. Taylor, 668 S.W.2d 681, 683 (Tenn. Crim. App. 1984). Malice was express "where a person actually contemplate[d] the injury or wrong which he inflict[ed]," and was implied where "the act [was] committed deliberately and [was] likely to be attended with dangerous consequences."[12]  Fox v. State, 441 S.W.2d 491, 495-96 (Tenn. Crim. App. 1969).

Tennessee assault with intent to commit first degree murder required "an attempt, or the unequivocal appearance of an attempt, to do a corporal injury to another." Cowley, 78 Tenn. at 284.  Therefore, it "ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another.  18 U.S.C. § 924(e)(2)(B)(i).  Tennessee assault with intent to commit first degree murder qualifies as a violent felony under the ACCA's use-of-force clause.  See also United States v. Pittro, 646 F. App'x 481, 482-84 (6th Cir. 2016)

---

[12] The United States cites Hughes v. Metropolitan Government of Nashville and Davidson County, 340 S.W.3d 352, 371 n.15 (Tenn. 2011), in which the Tennessee Supreme Court expressed some doubt about whether Tennessee case law had always held uniformly that "intention to do harm" is an element of assault, as stated in Richels.  The court cited Cowley and Harrell v. State, 593 S.W.2d 664, 670 (Tenn. Crim. App. 1979), and explained that the Tennessee Supreme Court had "suggested that proof of an intent to frighten may be sufficient to convict a defendant of assault." Id.  The dispute in Cowley concerned the intended target of an assault, not the intended consequences, and Cowley itself cited Richels for the proposition that "intent to do harm [was] essential" to assault.  78 Tenn. at 284.  Harrell, a robbery case, quoted a Connecticut decision, State v. Bitting, 291 A.2d 240, 242 (Conn. 1971), which, among other things, said that "[a]t common law, an essential element of the assault is an intent either to frighten or harm." Harrell adopted only Bitting's "definition and discussion . . . distinguishing specific intent from general intent," not its definition of assault per se. 593 S.W.2d at 665, 670-71.  Banks's conviction was for assault with intent to commit first degree murder, not simple assault.  Banks's offense required proof of "malice aforethought," which required at minimum that "the act [be] committed deliberately and [was] likely to be attended with dangerous consequences." Fox, 441 S.W.2d at 496.

(holding that Florida convictions for assault with intent to commit murder are violent felonies under the ACCA's use-of-force clause where Florida assault was defined as "an intentional, unlawful threat by word or act to do violence to the person of another coupled with an apparent ability to do so, and doing some act which creates a well-founded fear of such violence being done").

Banks contends that his conviction for assault with intent to commit first degree murder cannot be considered a violent felony under the ACCA's use-of-force clause because the Sixth Circuit in <u>Jones</u> held that this offense qualifies under the ACCA's residual clause. (Second Reply, Cv. ECF No. 13 at 3-4.) That an offense may qualify under the now-invalidated residual clause does not mean that it cannot also qualify under one of the ACCA's other clauses. A "crime may fit both the 'use of physical force' clause <u>and</u> the residual clause" because "aspects" of the two clauses "are not mutually exclusive." <u>Mitchell</u>, 743 F.3d at 1064. The <u>Jones</u> court did not need to decide whether Tennessee assault with intent to commit first degree murder qualified under the ACCA's use-of-force clause because the court determined that it qualified under the residual clause.[13] 673 F.3d at 507.

---

[13] Banks also argues that his conviction for assault with intent to commit first degree murder does not qualify as a violent felony under both <u>Mathis</u>

Banks's 1987 Tennessee conviction for assault with intent to commit first degree murder is a violent felony under the ACCA's use-of-force clause.

Banks is not entitled to relief based on <u>Johnson</u>. The Motion is DENIED.

## IV. Appeal

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>see also</u> Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); <u>see also</u> <u>Henley v. Bell</u>, 308 F. App'x 989,

---

and <u>McMurray</u>, but he does not explain why. (Reply, Cv. ECF No. 9 at 2; Second Reply, Cv. ECF No. 13 at 3.)

990 (6th Cir. 2009) (per curiam). A COA does not require a
showing that the appeal will succeed. <u>Miller-El</u>, 537 U.S. at
337; <u>Caldwell v. Lewis</u>, 414 F. App'x 809, 814-15 (6th Cir.
2011). Courts should not issue a COA as a matter of course.
<u>Bradley v. Birkett</u>, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, Banks is not entitled to relief under
<u>Johnson</u>. He cannot present a question of some substance about
which reasonable jurists could differ. The Court DENIES a
certificate of appealability.

The Sixth Circuit has held that the Prison Litigation
Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to
appeals of orders denying § 2255 motions. <u>Kincade v. Sparkman</u>,
117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal <u>in forma
pauperis</u> in a § 2255 case, and thereby avoid the appellate
filing fee required by 28 U.S.C. §§ 1913 and 1917, a prisoner
must obtain pauper status pursuant to Federal Rule of Appellate
Procedure 24(a). <u>Kincade</u>, 117 F.3d at 952. Rule 24(a) provides
that a party seeking pauper status on appeal must first file a
motion in the district court, along with a supporting affidavit.
Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides
that if the district court certifies that an appeal would not be
taken in good faith, or otherwise denies leave to appeal <u>in
forma pauperis</u>, a prisoner must file his motion to proceed <u>in</u>

forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)–(5).

In this case, because Banks is clearly not entitled to relief, the Court denies a certificate of appealability. It is CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is DENIED.[14]

**V.   Conclusion**

For the foregoing reasons, the Motion is DENIED. Banks's motions for a just, speedy, and inexpensive determination of his case (ECF No. 17) and to appoint counsel (ECF No. 19) are DENIED as MOOT.


So ordered this 25th day of April, 2018.


*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[14] If Banks files a notice of appeal, he must also pay the appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.